UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ROBERT CORDOVA,<br>Defendant. | Case No. 5:25-cr-00018-BLF-1<br><br>**ORDER GRANTING MOTION FOR REVOCATION OR STAY OF RELEASE ORDER**<br><br>[Re: Dkt. No. 15] |

Before the Court is the United States of America's ("Government") motion for revocation or stay of an order releasing Defendant Robert Cordova ("Cordova") from custody. Dkt. No. 15 ("Mot."). The government contends that there are no conditions or combination of conditions that will reasonably assure Defendant's appearance at future proceedings or the safety of the community, and therefore challenges the decision of Magistrate Judge Nathanael Cousins at a detention hearing on February 27, 2025 ordering Cordova's release. *See* Dkt. Nos. 13, 14.

The Court held a hearing on the Government's motion on March 3, 2025. *See* Dkt. No. 19. At the hearing, the Court heard oral argument and factual proffers from defense counsel and the Government, all of which informed the Court's decision regarding pretrial detention.

For the reasons that follow, as well as those stated on the record at the March 3, 2025 hearing, the Court GRANTS the Government's motion for revocation of Judge Cousins' order for release (Dkt. No. 15). The Court finds that pretrial detention of Cordova is required, as no condition or combination of conditions exists that will reasonably assure Cordova's appearance in these criminal proceedings or the safety of the community.

## I. BACKGROUND

### A. Factual Background

Cordova was charged with violations of 18 U.S.C. § 2114(a) and 18 U.S.C. §§ 111(a) and (b) in a criminal indictment issued on January 23, 2025, in connection with an alleged assault and robbery of a United States Postal Service ("USPS") letter carrier. Dkt. No. 3.

During the March 3, 2025 hearing on the Government's Motion for Revocation or Stay of Release Order, the letter carrier victim gave a statement that recited the following alleged events: On November 22, 2024, the letter carrier was robbed and assaulted in broad daylight while delivering mail in San Jose, California. After noticing that a man was leaning through the open window of his USPS delivery truck, the letter carrier approached the man. The man turned around and knocked the letter carrier to the ground, and then repeatedly punched the letter carrier while on top of him. The letter carrier described his confusion over being repeatedly struck by a stranger for no apparent reason—a reaction that the letter carrier described as "unprovoked"—and stated that he struggled to free himself and attempted to call for help while the man continued to hit him. Eventually, the man stopped punching the letter carrier, took some postal materials from the USPS truck, and departed. The letter carrier described substantial injuries, which required a surgery to insert a metal plate into his face and sewing his eye shut temporarily. Due to the injuries and recovery time, the letter carrier reports that he was obliged to miss a significant amount of work. He also reported continuing to feel concerned for the safety of himself and other postal workers while he conducts his work.[1]

The Government also played surveillance footage at the hearing, which was available from a motion detection surveillance camera in the vicinity of the incident that recorded segments of video. In the first surveillance video segment, an individual wearing a white sweatshirt and black pants is seen walking up to the USPS delivery truck and inserting his upper body through the open window of the truck. In the next video segment, that same individual appears on top of someone and continually punches that person for the length of the video (approximately fifteen seconds).

---

[1] The defense had the opportunity to question the letter carrier during the hearing but declined to do so.

1  The final video segment depicts the individual holding a white sweatshirt in his hands and wearing
2  a red shirt. He appears to kick the individual on the ground before entering the USPS truck,
3  retrieving an item, and departing by beginning to cross the street.

### B. Procedural Background

Cordova was indicted on January 23, 2025. Dkt. No. 3. He was charged with two counts: (1) Robbery of a United States Mail Carrier, 18 U.S.C. § 2114(a), and (2) Assaulting a Federal Employee, 18 U.S.C. §§ 111(a) and (b). *Id.* Cordova made his initial appearance on February 3, 2025 before Magistrate Judge Nathanael M. Cousins, at which a detention hearing was set for February 6, 2025. Dkt. No. 5. Prior to the detention hearing, the Government filed a Memorandum in Support of the United States' Motion for Detention, Dkt. No. 7, and Pretrial Services submitted a Pretrial Bail Report recommending detention, Dkt. No. 8.

Following the hearing, Judge Cousins issued an Order concluding that the Government had satisfied its burden to detain Cordova pending trial "by more than clear and convincing evidence that there is no combination of conditions that will reasonably assure the safety of the community if Cordova is released; and established by more than a preponderance of the evidence that there is a risk of non-appearance that cannot be mitigated by a combination of conditions." Dkt. No. 10 at 2. Judge Cousins committed Cordova to custody and requested a further in-custody mental health and substance abuse evaluation by New Bridge Foundation. *Id.* at 3. A further hearing was set for February 27, 2025. *Id.*

At the February 27, 2025 hearing, Judge Cousins granted Cordova's request to be released in order to participate in the New Bridge residential drug treatment program. Dkt. No. 13. The Government immediately requested and was granted a stay of the release order until 1:00 p.m. on February 28, 2025 to afford it time to appeal Judge Cousins's release order. *See id.* That evening, the Government filed its Motion for Revocation or Stay of Release Order. Dkt. No. 15. The undersigned then set a hearing on the Government's motion for March 3, 2025 at 1:00 p.m. and extended the stay of the release order until that time. Dkt. No. 16. The Court invited Cordova's counsel to submit a brief in opposition to the Government's motion, *id.*, and the Court received defense counsel's timely response on March 3, 2025, Dkt. No. 18 ("Opp.").

On March 3, 2025, the Court heard oral argument on the Government's motion. Defendant, Defendant's sister, and the victim mail carrier all made statements, and the Government presented video and photographic materials in support of its motion. The substance of the letter carrier's statement is described above. *Supra* section I.A. In his own statement, Cordova stated that he believes he will not be a danger to the community, and that the medication regimen he has been following while in custody is helping him manage his mental health symptoms. He explained that he has long experienced challenges with homelessness, drug use, and mental health, but that he has never had the opportunity to participate in a drug treatment or mental health program, so he would like the opportunity to participate in the New Bridge program. In her statement, Cordova's sister described her belief that Cordova would benefit from rehabilitative treatment. She stated that he has experienced a lot of very significant challenges in life, but that she believes treatment could help him make meaningful progress toward reintegrating into society. In addition, Cordova's sister said that she would fully support him in his efforts to obtain treatment. She has agreed to sign a $50,000 unsecured bond to help ensure his appearance after release.

The Court made factual findings on the record and GRANTED the Government's motion for revocation of Judge Cousins's order releasing Cordova. This Order memorializes those factual findings and the Court's determination that the Government has satisfied its burden to demonstrate by a preponderance of the evidence that no condition or combination of conditions exists that will reasonably assure Cordova's appearance in these criminal proceedings, or by clear and convincing evidence that the safety of the community can be protected. Therefore, the Court ORDERS Cordova's detention pending trial in this matter.

## II.  LEGAL STANDARD

This Court reviews *de novo* a magistrate judge's order regarding pretrial detention. *See United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq.*, persons facing trial are to be released under the least restrictive condition or combination of conditions that will "reasonably assure" the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(c)(2); *United States*

4

*v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985). "On a motion for pretrial detention, the Government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *Gebro,* 948 F.2d at 1121; *Motamedi*, 767 F.2d at 1406–07.

Section 3142(g) of the Bail Reform Act contains the following factors to evaluate whether there are any conditions of release that will "reasonably assure" a defendant's future appearances and the safety of any other person and the community. 18 U.S.C. § 3142(g). These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person including: (A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi,* 767 F.2d at 1407.

### III. DISCUSSION

#### A. Nature and Circumstances of the Offense Charged

The first factor listed in § 3142(g) requires the Court to consider the nature and circumstances of the offense charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). The Government argues that the offenses charged against Cordova are very serious, since both violations charged are crimes of violence and "[b]eing charged with a crime of violence weighs strongly against release." Mot. at 4–5 (citing *United States v. Buck*, 23 F.4th 919, 920 (9th Cir. 2022); *United States v. Juv. Female*, 566 F.3d 943, 947–48 (9th Cir. 2009); and *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014)). Moreover, the Government argues that the circumstances of the charged offense "are deeply troubling," since the

5

1  victim mail carrier was seriously injured in what is alleged to be an "unprovoked" attack. *Id.* at 5.
2  In opposition, Cordova argues that, while there is no question that the allegations against him are
3  "serious," he is accorded a presumption of innocence and the record is still under development.
4  Opp. at 4.  In particular, Cordova argues that there is "not currently video of how the altercation
5  began," and "one of the postal worker's statements acknowledges that he 'grabbed and pulled' Mr.
6  Cordova first." *Id.*

7        The Ninth Circuit has held that "an 'assault involving a deadly or dangerous weapon or
8  resulting in bodily injury,' under 18 U.S.C. § 111, is, categorically, a crime of violence." *Juv.*
9  *Female*, 566 F.3d at 947; *see Dominguez-Maroyoqui*, 748 F.3d at 920 ("[W]e've previously held
10 that the felony under § 111(b) is a crime of violence."  (citing *Juv. Female*, 566 F.3d at 947–48)).
11 Cordova has been charged with such conduct.  Although Cordova is, of course, correct that he is
12 presumed innocent until proven guilty, the question under this first factor is whether the nature
13 and circumstances of the charges he is facing weigh in favor of detention.  Since he has been
14 charged with a crime of violence, and since the charges are supported by an affidavit detailing
15 circumstances that suggest a serious physical assault in response to little or no provocation, the
16 Court finds that the nature and circumstances of the offenses charged weigh heavily in favor of
17 pretrial detention.

18       **B. The Weight of the Evidence Against Cordova**

19       The second factor listed in § 3142(g) requires the Court to consider "the weight of the
20 evidence against" Cordova.  18 U.S.C. § 3142(g)(2).  This is the "least important" factor,
21 *Gebro,* 948 F.2d at 1121, and "evidence of guilt is relevant only in terms of the likelihood that the
22 person will fail to appear or will pose a danger to the community," *Winsor*, 785 F.2d at 757.  The
23 Government argues that the weight of the evidence against Cordova is "strong" because Cordova
24 was arrested shortly after the incident, the mail carrier victim positively identified him, and a
25 neighborhood surveillance camera captured portions of the incident on video.  Mot. at 5.  There
26 were also eyewitnesses.  *Id.*  In response, Cordova argues that there is no video, as of yet,
27 depicting how the altercation began, and there are differing accounts as to what occurred.  Opp. at
28 4.

Again, while Cordova is correct that the record in this matter is still under development, the Court concludes that the second factor under § 3142(g) also supports pretrial detention. The question is whether the evidence submitted thus far suggests a likelihood that the defendant will fail to appear or will pose a danger to the community. In this case, there are partial video recordings of the incident as well as other information, including identification by the victim letter carrier, tying Cordova to the assault. As previously discussed, the charged assault is alleged to have occurred with little to no provocation and resulted in quite serious injuries to the victim. This evidence supports a likelihood that Cordova will pose a danger to the community.

Additionally, the report submitted by Pretrial Services indicates that Cordova's conduct during his arrest and his unstable living situation, among other aggravating factors, demonstrate a risk of non-appearance. Dkt. No. 8 at 12. Although the Court appreciates that there are also certain mitigating factors, such as Cordova's willingness to participate in treatment and the lack of history of failing to appear at court proceedings, the Court concludes that the overall weight of the evidence suggests a significant risk that Cordova will fail to appear in this case.

**C. Cordova's History and Characteristics**

The third factor listed in § 3142(g) requires the Court to consider the history and characteristics of the person, including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3).

On the third factor, the Government argues that Cordova has an "extensive" criminal record, including "numerous felony convictions, many of which were crimes of violence." Mot. at 7. The Government also argues that Cordova was on parole at the time that he allegedly committed the offenses at issue here, and that Cordova's history otherwise indicates a willingness to commit crimes while on supervision. *Id.* at 8. In response, Cordova's counsel argues that his "mental state at the time of the offense appears to have been vastly different" as compared to his

7

current mental state. Opp. at 5. Cordova's counsel further notes that he is currently in treatment for his mental health and that his release plan includes both mental health and substance abuse treatment. *Id.* In addition, Cordova's counsel argues that Cordova's criminality has "slowed and changed" as he has gotten older, and that his most recent felony convictions occurred more than six years prior to his arrest for the instant charges. *Id.* at 6.

The evidence of Cordova's history and characteristics is mixed. Cordova has resided in San Jose for his entire life and he maintains contact with his sister, who attended the hearing and provided a thoughtful and heartfelt statement on his behalf. However, he has a lengthy and substantial history of drug abuse and mental health challenges, as well as numerous previous criminal charges and convictions. *See* Dkt. No. 8 at 3–11. For example, between 1993 and 2019, Cordova has twelve convictions related to possession, use, and sale of controlled substances. *Id.* at 5–10. Between 1997 and 2014, he was thrice convicted on domestic abuse charges, and in 1997 and 2002 he was convicted on felony charges of engaging in sex with a minor. *Id.* at 6–9. He also has multiple convictions for obstructing/resisting public officers and vehicle theft. *Id.* at 5–10. And Cordova's criminal record documents parole/probation violations in at least 2002, 2006, 2008, 2010, and 2012. *Id.* at 8–9. Moreover, the incident underlying the present charges occurred while Cordova was on parole. *Id.* at 11. This history reflects a pattern of unlawful conduct—including commission of multiple crimes of violence and repeated failure to adhere to parole/probation conditions—that militates in favor of detention pending trial.

In addition, there are very limited records of Cordova's employment history, and he seems to have few financial resources. *Id.* at 3. Particularly relevant to Cordova's request for release to the New Bridge program, Cordova reported to Pretrial Services that he participated for one week in an in-patient program during November 2024 but failed to complete the program. *Id.* This report contradicts his representation at the hearing that he has never had the opportunity to participate in a drug treatment or mental health program and leaves the Court very concerned that Cordova would also quickly depart from New Bridge—which is not a secure facility—and would not successfully complete the treatment plan laid out by that program.

Finally, the Court finds compelling the Government's argument at the hearing that

8

Cordova's criminal and personal history appear to be marked by his struggles with impulse control. Looking at Cordova's history and characteristics, the Court is not persuaded that incentives such as pretrial monitoring and Cordova's sister's status as a surety for his release will prevent him from committing further violations. It is commendable that Cordova has been voluntarily participating in treatment while in custody thus far, and the Court sincerely hopes that he continues to do so. But this short period of success in a secure setting does not outweigh his decades-long criminal history, his parole/probation violations, and his past failure to seek out and successfully complete treatment that might have helped him avoid harming his community and the victim in this case.

### D. The Nature and Seriousness of the Danger Posed by Release

The fourth factor listed in § 3142(g) requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). On this factor, the Government argues that Cordova poses "a serious danger to the community and to the victim in this case." Mot. at 8. And since Cordova could "simply walk away" from an inpatient drug treatment facility, the Government contends that Cordova is not suitable for inpatient treatment and could place patients, staff, and the general public at risk. *Id.* at 8–9. Cordova responds that New Bridge has assessed his "present readiness for treatment, whether the facility can meet [his] mental health needs, whether [he] will comply with strict program regulations," and whether his history evinces "an un-mitigatable risk to the program or other participants," and has determined that Cordova is appropriate for admission to the program. Opp. at 6. Accordingly, Cordova argues that residential treatment at New Bridge will ensure his compliance with mental health and substance abuse treatment, *id.*, mitigating any risk to the community.

The Court finds that the Government has presented substantial evidence showing that Cordova poses a substantial risk to the community. Cordova has an extensive criminal record. Crucially, although his counsel argues that his "criminal history over the past 12 years has clear markers of untreated mental health and substance use disorder that has not *typically* manifested as violence," Opp. at 7 (emphasis added), that argument does not change the reality of the present

9

charges, which allege that Cordova acted violently last fall in response to little or no provocation. Moreover, as his own counsel acknowledges, Cordova had sought out treatment assistance "in October, shortly before his arrest," but as of the date of the alleged crime, he was "not yet stable in terms of his medication or sobriety." *Id.* at 6. The Court is therefore concerned that Cordova's stability may fluctuate throughout his time in the New Bridge program—or that his treatment plan will fall apart entirely if he departs from New Bridge early or unexpectedly, thus terminating his participation. In either case, members of the public may be at risk of a random, violent attack. The injuries suffered by the mail carrier victim in this case indicate that the seriousness of physical harm suffered in such an attack may be substantial, so the Court concludes that the final factor under § 3142(g) also favors pretrial detention.

**IV.  ORDER**

For the foregoing reasons, as well as those stated on the record during the March 3, 2025 hearing, the Court finds that pretrial detention of Cordova is warranted. The Government has carried its burden to show by clear and convincing evidence that Cordova poses a danger to the community, and that there is no combination of conditions that will reasonably assure the safety of the community. In addition, the Government has shown by a preponderance of the evidence that Cordova poses a flight risk. Thus, IT IS HEREBY ORDERED that the Government's motion for revocation of the release order is GRANTED.

**IT IS SO ORDERED.**

Dated: March 4, 2025

_____
BETH LABSON FREEMAN
United States District Judge